AETNA CASUALTY & SURETY COMPANY,

v.

Raymond J. SULLIVAN.

No. 93–66–A.

Supreme Court of Rhode Island.

Nov. 24, 1993.

Michael Sarli, Providence, for plaintiff.

Lauren Jones, Jones Associates, Richard Abrams, Abrams & Verri, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

This declaratory judgment action was certified to this court by the Providence County Superior Court pursuant to G.L.1956 (1985 Reenactment) § 9–24–25 and Rule 72(a) of the Superior Court Rules of Civil Procedure. At issue is the coverage provided by the automobile-insurance policy issued by the plaintiff, Aetna Casualty & Surety Company (Aetna), to the defendant, motorist Raymond J. Sullivan, Sr. (Sullivan). Although there is no dispute that Sullivan's policy provided coverage for his accident with an uninsured motorist, there is a deadlock over the specific amount of Aetna's liability under the policy's uninsured-motorists coverage. The question certified to this court is as follows:

"Does the Defendant's insurance policy with Plaintiff provide uninsured motorist coverage in the amount of $50,000, as contended by the Plaintiff, or in the amount of $300,000, as contended by the Defendant?"

We are of the opinion that the policy provides $50,000 for uninsured-motorists coverage.

On August 17, 1985, Sullivan's accident with an uninsured motorist triggered the terms of the insurance policy he held with Aetna. Pursuant to its interpretation of the insurance policy, Aetna paid Sullivan a total of $55,000 for injuries sustained in the accident: $50,000 under his uninsured-motorists coverage and $5,000 under his medical-payments coverage. Sullivan accepted the payment, but because he believed that his policy provided uninsured-motorists coverage in the amount of $300,000, he reserved his right to contest Aetna's interpretation of the policy.

On July 6, 1988, Aetna instituted a declaratory judgment action seeking an order and judgment declaring (1) that the minimum uninsured-motorists coverage required by G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1985, ch. 288, § 1, did not apply retroactively[1] to Sullivan's insurance policy, and (2) that the policy in question provides uninsured-motorists coverage in the amount of $50,000. On September 6, 1989, the Superior Court denied Aetna's motion for summary judgment. Thereafter, the parties filed an agreed statement of facts in accordance with § 9–24–25 and jointly moved for certification. On or about November 12, 1992, the Superior Court entered an order granting the parties' motion.

The agreed statement of facts provides the framework for answering the certified question. The parties agreed as follows:

"1. On August 17, 1985, plaintiff Raymond J. Sullivan, Sr. was the owner of and was insured under policy no.

1. The effective date of the 1985 amendment to § 27–7–2.1 was June 26, 1985. The amendment provided that an insured must be granted the option of accepting uninsured-motorists coverage "in an amount equal to or less than the limits of liability insurance set forth in said policy, but in no instance less than the limit set forth in section 31–31–7." P.L.1985, ch. 288, § 1 (current version codified at G.L.1956 (1989 Reenactment) § 27–7–2.1). General Laws 1956 (1982 Reenactment) § 31–31–7 provides for a minimum coverage of $25,000 for bodily-injury liability to one person and a minimum of $50,000 for bodily injury to two or more persons in any one accident.

21SY13936305PCA issued by defendant Aetna Casualty & Surety Company.

"2. The policy was originally issued to plaintiff by defendant prior to March 6, 1985, and was renewed in amended form on or about March 6, 1985. The amended policy as renewed on March 6, 1985, is hereinafter referred to as 'the policy.'

"3. The policy provided coverage for the policy period of March 6, 1985 to September 6, 1985.

"4. A true copy of policy no. 21SY13936305PCA, including its declaration sheet, is attached hereto as Exhibit A.

"5. On its declaration sheet, the policy provides under 'Coverage C, Uninsured Motorists,' for a single 'Limit of Liability' of $50,000.

"6. On its declaration sheet, the policy provides under 'Coverage A, Liability,' for a single 'Limit of Liability' of $300,000.

"7. On August 17, 1985, Raymond J. Sullivan, Sr. was involved in an automobile collision in West Warwick, Rhode Island with an uninsured motorist.

"8. As a result of the automobile accident of August 17, 1985, the uninsured motorist provisions of policy no. 21SY13936305PCA were triggered.

"9. As a result of the automobile accident of August 17, 1985, Raymond J. Sullivan, Sr. sustained personal injuries.

"10. A real controversy exists between the parties with respect to limits of liability provided for uninsured motorist coverage under the policy: Raymond J. Sullivan, Sr. contends that the coverage is $300,000; Aetna Casualty & Surety Co. contends that the coverage is $50,000."

On appeal, both parties agreed that the uninsured-motorists coverage provided by the 1985 amendment to § 27–7–2.1 does not apply retroactively to the insurance policy at issue. *VanMarter v. Royal Indemnity Co.,* 556 A.2d 41, 44–45 (R.I.1989). The issue is, then, whether Aetna is contractually obligated to pay $50,000 or $300,000 in uninsured-motorists coverage.

■ . It is well established that this court applies the rules for construction of contracts when interpreting terms of an insurance poli-

cy. *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983). The necessary prerequisite to this court's departure from the literal language of a policy is a finding that the policy is ambiguous. *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 551–52 (R.I.1990); *Bush v. Nationwide Mutual Insurance Co.,* 448 A.2d 782, 784 (R.I. 1982). In order to determine whether ambiguity exists, we read the policy in its entirety, giving words their plain, ordinary, and usual meaning. *Bush,* 448 A.2d at 784; *Nagy v. Lumbermens Mutual Casualty Co.,* 100 R.I. 734, 737, 219 A.2d 396, 398 (1966). In doing so, we "accord equal importance to all relevant parts of the * * * policy and [do] not simply establish ambiguity by viewing a word in isolation or by taking a phrase out of context." *Streicker,* 583 A.2d at 552. At the same time, we refrain from employing "mental gymnastics" or from stretching the imagination to read ambiguity into a policy where none is present. *Gleason v. Merchants Mutual Insurance Co.,* 589 F.Supp. 1474, 1481 (D.R.I.1984); *Mullins v. Federal Dairy Co.,* 568 A.2d 759, 762 (R.I.1990).

■ If, after the policy is read in its entirety, the terms are found to be ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer. *Bartlett v. Amica Mutual Insurance Co.,* 593 A.2d 45, 47 (R.I.1991); *Bush,* 448 A.2d at 784. But, in the event the policy is determined to be clear and unambiguous, judicial construction is eclipsed and the contract must be applied as written. *Malo,* 459 A.2d at 956.

An inspection of Sullivan's policy immediately shows that the policy is comprised of two parts: the Declarations Page and the Agreement. The Declarations Page displays in tabular format the distinctive features of the policy. By inspection, the Declarations Page reveals, *inter alia,* the insured's name and address, the effective date and duration of the policy, the "auto" covered by the policy, the "premium" or cost of the policy, and, at issue here, the limit of the insurer's liability for various coverages. The Declarations

Page is attached to a twelve-page amended "Agreement," which sets forth in detail the parameters of the contract between Sullivan and Aetna. The Agreement includes a four-page "Amendment of Personal Auto Policy" to which we shall refer.

The analysis of the "Limit of Liability" section of the Declarations Page is critical to our determination of Aetna's liability. That section reads in relevant part:

| "Part | COVERAGES | LIMIT OF LIABILITY |
|---|---|---|
| A | LIABILITY | $300,000 EACH ACCIDENT |
| B | MEDICAL PAYMENTS | $ 5,000 EACH PERSON |
| C | UNINSURED MOTORISTS | $ 50,000 EACH ACCIDENT" |

Because this dispute centers on Aetna's liability arising from Sullivan's accident with an uninsured motorist, we focus on the provisions of the Agreement found in Part C "Uninsured Motorists Coverage." The section on "Limit Of Liability" for uninsured motorists is found in the amended portion of the policy. That section, in relevant part, reads:

"PART C. UNINSURED MOTORISTS COVERAGE

\* \* \* \* \* \*

2. The LIMIT OF LIABILITY provision is replaced by the following:

A. If separate limits of liability for bodily injury liability are shown in the Declarations for this coverage:

1. The limit of liability for 'each person' for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident.

2. Subject to the above limit for 'each person,' the limit of liability shown in the Declarations for 'each accident' for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

B. If a single limit of liability for bodily injury liability is shown in the Declarations for this coverage, this is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. We will apply this limit to provide any separate limits required by law for Uninsured Motorists Coverage. However, this provision will not change our total limit of liability."

■ Just as a map of the terrain directs the traveler, this amended section assists us in locating our coordinates on the Declarations Page. First, however, we face a decision in Part C, section 2, regarding which subsection controls: "A", that applies to "separate limits of liability for bodily injury liability," or "B", that applies to "a single limit of liability." In making this determination, the amended section limits our scrutiny to the limits of liability *"for this coverage."* The only possible interpretation of the phrase "this coverage" is the coverage being dealt with in Part C, that is, uninsured motorists coverage. Therefore, in returning to the Declarations Page, we look at the intersection of the "Limits of Liability" column and the "Uninsured Motorists Coverage" row and find a single number contained therein. Hence, subsection "B" controls. That subsection further informs us that if a policy has a "single limit of liability * * * this is our maximum limit of liability for all damages for bodily injury." Thus, we arrive at our destination, the single limit, $50,000, which is Aetna's maximum liability under Sullivan's policy for uninsured-motorists coverage.

Sullivan asserts that the term "bodily injury liability" is ambiguous. We disagree. The first paragraph of the Agreement's Part C "Uninsured Motorists Coverage" explains:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of *bodily injury* sustained by a covered person and caused by an accident." (Emphasis added.)

"Bodily injury" liability is, therefore, the only liability Aetna covers under the uninsured-motorists coverage provision. Sullivan ignores key terms in the policy and reads others in isolation from the rest of the policy. Such obfuscation conflicts with our clear

rules on interpreting insurance policies. *See Streicker,* 583 A.2d at 552.

Accordingly, this court finds that the defendant's insurance policy with the plaintiff provides uninsured-motorists coverage in the amount of $50,000. The papers in this case are remanded to the Superior Court for entry of judgment consistent with this opinion.

FAY, C.J., did not participate.