James C. **LYNCH**, Jr., et al.

v.

**SPIRIT RENT–A–CAR, INC.**, et al.

No. 2007–247–Appeal.

Supreme Court of Rhode Island.

March 6, 2009.

Michael J. McCaffrey, Esq., Warwick, for Plaintiff.

Paul J. Bogosian, Jr., Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

After their relative was killed in a motor vehicle accident on West Shore Road, the plaintiffs, James C. Lynch, Jr. and Patricia Lynch (collectively plaintiffs), co-administrators of the estate of Kevin Lynch (Lynch or decedent), filed the present action against the defendants, Spirit Rent–A–Car, Inc. (Spirit), and Alamo Rent–A–Car, LLC (Alamo) (collectively defendants),[1] and alleged that the defendants failed to pay claims for uninsured motorist (UM) coverage. The trial justice granted the defendants' motion for summary judgment, and the plaintiffs timely appealed to the Supreme Court. We affirm the judgment of the Superior Court.

### Facts and Travel

On October 2, 2001, during the early hours of the morning, Kenneth Germani (Germani)[2] met Lynch at Hooters Restaurant in Warwick. After Lynch paid his bill, he and Germani left the restaurant in

---

1. As explained in this opinion, the rental car that Alamo leased to the decedent was owned by Spirit. The record discloses that, at the time of the accident in this case, Spirit, an Ohio corporation, was doing business in Rhode Island as Alamo, a Delaware corporation.

2. Throughout the record in this case, Germani's name is spelled "Germaini." In the documents that he signed, however, his name is spelled "Germani"; thus, we will defer to his spelling.

separate motor vehicles—Lynch was driving a Chevrolet Cavalier that was owned by Spirit and rented from Alamo. The pair proceeded to West Shore Road at a high rate of speed where, at a bend in the road, Lynch lost control of his vehicle and crashed into a tree.[3] The Warwick police were able to extract Lynch from the wreckage using a hydraulic rescue tool; he died shortly thereafter at Rhode Island Hospital.

On September 30, 2004, plaintiffs filed a complaint against the decedent's insurance carrier, Travelers Insurance Company (Travelers), and Alamo, Spirit, and Germani. The plaintiffs alleged that they made several claims under the UM provisions of defendants' various insurance policies that the companies denied. The plaintiffs also alleged that Germani's negligent driving caused the decedent to strike a tree. However, on March 8, 2003—before the complaint was filed—plaintiffs had executed a release, upon payment of $25,000, of any and all claims against Germani arising from the accident. Accordingly, the trial justice granted Germani's motion for summary judgment.

Spirit and Alamo also moved for summary judgment, alleging that the decedent rejected supplemental insurance in the rental agreement (rental agreement or agreement) with Alamo. Appended to the motion was a copy of the rental agreement, with the decedent's initials, "KL," next to the following statements listed in the contract that decline insurance coverage:

"RENTER DECLINES PHYSICAL DAMAGE WAIVER (PDW) AND ACCEPTS DAMAGE RESPONSIBILITY;

"RENTER DECLINES PERSONAL ACCIDENT INSURANCE (PAI) AND PERSONAL EFFECTS COVERAGE (PEC);

"RENTER DECLINES OPTIONAL SUPPLEMENTAL LIABILITY PROTECTIONS."

The defendants argued that when he initialed the portions of the agreement that expressly declined coverage, Lynch rejected any insurance coverage under the rental agreement.

In response, plaintiffs challenged the authenticity of the initials appearing in the agreement and provided an affidavit from Patricia Lynch, the decedent's sister, who testified that the initials that appeared on the rental agreement were not penned by her brother. She conceded, however, that the decedent signed the agreement. Notably, the decedent's initials did not appear in the portions of the rental agreement signifying that Kevin Lynch purchased insurance. However, the trial justice denied defendants' motion for summary judgment without prejudice, finding that Patricia Lynch's affidavit raised a genuine issue of fact as to whether the decedent rejected the insurance coverage that was offered.

Approximately one year later, defendants again moved for summary judgment, this time approaching the UM coverage issue from two directions; the defendants argued (1) that they rejected UM coverage in their own insurance policies and (2) that the decedent failed to purchase coverage from them at the time he rented the vehicle.[4]

The record before us discloses that defendants were covered by two insurance

---

**3.** The Warwick Police Department concluded from its investigation that Lynch and Germani were drag racing and that Lynch lost control of his automobile after he pulled the emergency break.

**4.** The defendants also moved pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure for entry of final judgment with respect to plaintiffs' claims against them.

policies that are relevant to the issues in this case. The first policy was issued by National Union Fire Insurance Company on June 30, 1997 (National Union policy), to Republic Industries, Inc. (Republic Industries), the original named insured of the policy and predecessor insured to defendants. Under Endorsement 1 of the National Union policy, defendants are listed as named insureds. The second insurance contract is an umbrella policy (umbrella policy) issued by Lexington Insurance Company that covered Alamo at the time of the fatal accident.

With respect to their first argument, defendants asserted that, in accordance with G.L.1956 § 27–7–2.1, Republic Industries lawfully reduced their UM coverage to zero. Therefore, defendants claimed that at the time of the collision in this case there was no UM coverage. Furthermore, defendants argued that the umbrella policy did not extend coverage into areas excluded in the National Union policy. The defendants supported these contentions with an affidavit from Mary Morse, who was the risk-management director for Vanguard Car Rental USA, Inc. (Vanguard USA) [5] and, prior to that, held the same position with ANC Rental Corporation.[6]

Turning to their second argument, defendants alleged that although there may be a genuine issue of fact as to whether the decedent initialed the portions of the rental agreement rejecting coverage, he nevertheless did not purchase insurance because he did not pay the necessary fees, as demonstrated on the face of the agreement. This assertion was supported by an affidavit from Diana Geremia (Geremia), who, according to her testimony, was the director of damage recovery operations for Vanguard USA and Spirit—apparently related entities in this case—at the time of the decedent's accident.

The plaintiffs again asserted that Patricia Lynch's affidavit created a genuine issue of fact about whether the decedent rejected the insurance offered in the rental agreement. In addition, plaintiffs alleged that because Kevin Lynch was an *insured* under the National Union policy, and because he did not expressly reject UM coverage in writing—as, they contended, was required by § 27–7–2.1(a)—he was entitled to UM coverage by operation of law.[7]

The trial justice issued a written decision granting defendants' motion for summary judgment. She first found that the National Union policy did not provide UM coverage. In reaching this conclusion, the trial justice noted that the initial policyholder selected the minimum limit for general liability coverage; she further noted that, in an attached form entitled "Rejection of Uninsured/Underinsured Motorists Coverage or Selection of Lower Limit of Liability (Rhode Island)" (rejection form), that explicitly referred to § 27–7–2.1, Republic Industries, one of the named insureds, elected to reduce to zero the UM

---

5. Vanguard USA is mentioned several times throughout the record. In her written decision, the trial justice described Vanguard USA as a predecessor to ANC Rental Corporation (ANC); however, the record otherwise is devoid of any description of Vanguard USA's relationship to the parties in this case. The entity Vanguard Car Rental Claims, Inc. (Vanguard Claims) also appears in the record. Apparently, Vanguard Claims is a third-party claims administrator for Spirit. However, the record does not express the relationship, if any, between Vanguard USA and Vanguard Claims.

6. ANC was a named insured in the umbrella policy. Apparently, as can be discerned by her averments in the affidavit, Morse was employed by ANC at the time of the accident in this case.

7. The plaintiffs also moved to strike the Morse and Geremia affidavits.

coverage afforded under the National Union policy.

The trial justice found that, as provided by § 27–7–2.1(a), named insureds, including defendants who had purchased minimum coverage for bodily injury, could decline UM coverage as long as they signed "an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists"—a condition that the trial justice deemed satisfied by the rejection form. The trial justice also rejected plaintiffs' argument that the decedent was a named insured under the National Union policy; instead, she found that Republic Industries and defendants, clearly and unambiguously, were the named insureds in the policy as set forth in the declarations page and Endorsement 1. Accordingly, the trial justice concluded that because Republic Industries properly rejected UM coverage, plaintiffs were not entitled to claim it under the National Union policy.

Furthermore, after examining the Morse affidavit,[8] the trial justice denied the motion to strike and found that "because the [National Union policy] provided no uninsured/underinsured motorist coverage to [defendants], the [u]mbrella [p]olicy, likewise, afforded no such coverage."[9]

Finally, the trial justice found that the issue of fact created by Patricia Lynch's affidavit—specifically, whether the initials on the rental agreement declining coverage were the decedent's—was not material and, therefore, did not prevent the grant of summary judgment in this case. The trial justice determined (1) that the decedent failed to initial the provision of the agreement in which one expressly requests personal accident insurance and, (2) significantly, that no additional money was paid for that coverage. The trial justice also deemed relevant to her decision a provision on the back of the rental agreement that provided:

"Waiver and Rejection of Personal Injury Protection, Uninsured or Underinsured Motorist Protection. Alamo provides no personal injury protection, uninsured or underinsured motorist protection, * * * or other optional coverage pursuant to this Agreement, and renter expressly rejects and waives such coverage from Alamo. If notwithstanding the foregoing, Alamo is required by law to provide personal injury protection, uninsured or underinsured motorist protection, or other coverage to anyone, Alamo will provide coverage only up to the minimum limits required by the state in which the vehicle is rented, and renter, authorized driver and other occupants or claimants expressly waive and reject any coverage in excess of the minimum required limits."

Subsequently and in accordance with her written decision, the trial justice entered a final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure denying and dismissing plaintiffs' claims against defendants. The plaintiffs timely appealed.[10]

---

8. According to Morse, Coverage A of the umbrella policy is a "follow form"—that is, anything rejected or excluded in the underlying policy (in this case, the National Union policy) was not included in the next layer of insurance (the umbrella policy); or, putting it another way, as Morse testified by affidavit, Coverage A of the umbrella policy did not provide broader coverage than the National Union policy.

9. The trial justice did not consider the merits of plaintiffs' motion to strike Geremia's affidavit, however, because she concluded that her decision to grant summary judgment rendered plaintiffs' motion to strike moot.

10. According to the briefs filed by the parties, Travelers settled its dispute with plaintiffs for $25,000 while this appeal was pending.

## Standard of Review

 This Court reviews *de novo* a trial justice's decision granting summary judgment. *Cullen v. Lincoln Town Council,* 960 A.2d 246, 248 (R.I.2008) (citing *Willis v. Omar,* 954 A.2d 126, 129 (R.I. 2008)). We review the evidence in a light most favorable to the nonmoving party and will affirm the judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of facts in dispute." *Id.* (quoting *Willis,* 954 A.2d at 129). "However, the opposing part[y] will not be allowed to rely upon mere allegations or denials in [the] pleadings. Rather, by affidavits or otherwise [the opposing party has] an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Providence Journal Co. v. Convention Center Authority,* 774 A.2d 40, 46 (R.I.2001) (quoting *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998)). Furthermore, "summary judgment should enter 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" *Lavoie v. North East Knitting, Inc.,* 918 A.2d 225, 228 (R.I.2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[C]omplete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548).

## Analysis

On appeal, plaintiffs raise several arguments challenging the granting of the second motion for summary judgment, averring (1) that the trial justice violated the law of the case doctrine by granting defen-dants' second motion for summary judgment and (2) that the trial justice erred in denying their motion to strike the Morse and Geremia affidavits because the documents do not set forth facts that would be admissible in evidence. Additionally, plaintiffs assert that the decedent was an insured for purposes of UM coverage through the National Union and umbrella polices; thus, they argue, the trial justice erred in granting summary judgment.

## I

### Law of the Case

 We first address plaintiffs' argument that the law of the case doctrine mandated the denial of defendants' second motion for summary judgment. We reject this contention. The law of the case doctrine provides that, "after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." *Chavers v. Fleet Bank (RI), N.A.,* 844 A.2d 666, 677 (R.I.2004) (quoting *Paolella v. Radiologic Leasing Associates,* 769 A.2d 596, 599 (R.I. 2001)). "The law of the case doctrine, however, is a flexible rule that may be disregarded when a subsequent ruling can be based on an expanded record." *Id.* (citing *Goodman v. Turner,* 512 A.2d 861, 864 (R.I.1986)).

 We are satisfied that the judgment in this case was not issued in contravention of the law of the case doctrine. Initially, we note that the same trial justice heard and decided both motions for summary judgment, denying the first motion and granting the second. *See Chavers,* 844 A.2d at 678 ("The purpose of the law of the case doctrine is to ensure 'the stability of decisions and avoid[ ] unseemly contests between judges that could result in a loss

of public confidence in the judiciary.'") (quoting *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 683 (R.I. 1999)). Furthermore, summary judgment was granted on an expanded record, replete with new evidence, including the National Union policy and the umbrella policy; the trial justice also was confronted with a new (and to our minds dispositive) argument—namely, that the decedent never paid for additional or supplemental insurance. Accordingly, the trial justice took up and decided the second motion appropriately and within the confines of the law of the case doctrine.

## II

### Uninsured Motorist Coverage

■■■■■ We now consider whether defendants had UM coverage under the policies. "It is well established that this [C]ourt applies the rules for construction of contracts when interpreting an insurance policy and that we shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995) (citing *Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I.1993)). "In order to determine whether the policy is ambiguous, we read the policy in its entirety, giving words their plain, ordinary, and usual meaning." *Id.* "We refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Id.* If the terms of the policy are ambiguous, subjecting them to more than one reasonable interpretation, "the policy will be strictly construed in favor of the insured and against the insurer." *Id.*

■■■■■ Additionally, we review *de novo* issues of statutory interpretation. *Liberty Mutual Insurance Co. v. Kaya*, 947 A.2d 869, 872 (R.I.2008) (citing *State v. LaRoche*, 925 A.2d 885, 887 (R.I.2007)). When this Court is confronted with a statute that contains clear and unambiguous language, we construe the statute literally and accord the terms their plain and ordinary meaning. *Id.*

Based on our *de novo* review of the record on appeal, we are satisfied that the trial justice did not err when she granted summary judgment in this case. There is no evidence that the decedent was insured with UM coverage under any policy of insurance that defendants purchased; nor did he purchase insurance coverage in connection with the rental agreement. Indeed, the evidence produced in this case leads to the conclusion that decedent was not insured for the purposes of UM coverage.

### A

### National Union Policy

Section 27–7–2.1, entitled "Uninsured motorist coverage," reads in pertinent part:

> "(a) No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless coverage is provided in or supplemental to the policy, for bodily injury or death in limits set forth in each policy, but in no instance less than the limits set forth in [G.L.1956] § 31–31–7 * * * for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *. The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits.

The *named insured* shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31–31–7, *unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the [G]eneral [L]aws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists.*" (Emphases added.) [11]

■ The plaintiffs argue that under § 27–7–2.1(a), the decedent, as an insured, was required to reject UM coverage in writing. However, we are satisfied that, even if the decedent met the description of an insured under the National Union policy,[12] as a lessee of the vehicle Lynch was not a *named insured.* Thus, we deem plaintiffs' argument unavailing and our analysis is at an end. As expressly provided by § 27–7–2.1(a), only "the *named insured* [has] the option of selecting a [UM coverage] limit in writing less than the bodily injury liability coverage." (Emphasis added.) The declarations page of the

National Union policy clearly lists Republic Industries as the "named insured," and Endorsement 1 to that policy lists Spirit and Alamo as additional named insureds. Nowhere in that policy, however, does the name Kevin Lynch appear as a named insured. Accordingly, we hold that because the decedent was not a named insured under the policy, there was no statutory requirement that he expressly reject UM coverage.

■ However, even were Lynch found to be a named insured, we nevertheless are satisfied (1) that Republic Industries purchased the minimum compulsory coverage required by § 27–7–2.1(a) and (2) that it lawfully reduced the UM coverage to zero. As shown by the declarations page of that policy, the chosen limit for liability coverage is "minimum financial responsibilities," which the policy defines as "the minimum compulsory insurance limits required in the state or jurisdiction where the covered [auto] is rented." On the rejection form,[13] Republic Industries indicated its intention to reduce UM coverage to a limit of zero.[14]

---

**11.** This subsection has undergone minor stylistic changes since 2001.

**12.** The National Union policy defines insured as: "Only while occupying the rental vehicle, any 'Renter' or 'Authorized Additional Driver' where you have contractually agreed to provide limits covered by this Policy, but only while the rental vehicle is being driven by the 'Renter' or 'Authorized Additional Driver' and all terms and conditions of the Rental Agreement have been met."

**13.** The plaintiffs do not challenge the sufficiency of the rejection form as being the "advisory notice" contemplated in G.L.1956 § 27–7–2.1(a). Thus, we will assume that the rejection form is sufficient in that respect.

**14.** Nevertheless, plaintiffs maintain that the rejection form contains an ambiguity. The identifying number on the declarations page

of the National Union policy is RM CA 320–82–03—the same number that appears at the top of the rejection form. However, written at the bottom of the rejection form—directly across from the signature of the agent for Republic Industries and on the line entitled "Policy/Broker Number of Date"—is the number RM CA 320–71–76. Even if plaintiffs' argument has merit, however, it fails because they never presented the argument to the trial justice; therefore, they are precluded from doing so on appeal. *See Dallman v. Isaacs,* 911 A.2d 700, 704 (R.I.2006) ("If a party fails to assert a legal reason why summary judgment should not be granted [to the trial justice], that ground is waived and cannot be considered or raised on appeal.") (quoting *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir.1995)).

■ Additionally, we note that defendants themselves were not required to make the written rejection that § 27-7-2.1(a) mandates. This Court previously has declared that insurers are not required under § 27-7-2.1 to obtain additional rejections of UM coverage when named insureds are added to a policy in which such coverage already has been properly rejected. *Ferreira v. Integon National Insurance Co.,* 809 A.2d 1098, 1101 (R.I.2002). In this case, defendants were added to the National Union policy after the policy commenced (Endorsement 1); thus, they were not required to make a written rejection of UM coverage because Republic Industries already had done so. *See id.* ("[T]he addition of plaintiff to the policy changed the policy's terms, but did not represent the new issue or delivery of a policy."). Accordingly, we are satisfied that the National Union policy lawfully does not provide UM coverage to lessees, including Kevin Lynch.

### B

### Umbrella Policy

The plaintiffs next assert that the decedent is entitled to insurance benefits under Alamo's umbrella policy. We disagree.

■ Initially, we note that plaintiffs argue on appeal that the trial justice erred in denying their motion to strike Morse's affidavit, in which she opined about the content and meaning of the umbrella policy; they contend that Morse failed to set forth facts that would be admissible in evidence. *See* Super. R. Civ. P. 56(e). We need not reach this issue because we are satisfied that Morse merely proffered her own interpretation of the insurance policies—an opinion that is irrelevant in the context of this case. Because the construction of an insurance policy is a question of law, we are able to interpret the policies ourselves

without reference to her affidavit. *See Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003) ("The terms used [in an insurance policy] must be given their plain and ordinary meaning, and the test to be applied is not what the insurer intended, but what the ordinary reader and purchaser would understand them to mean."). Further, because we discern no relevant ambiguity in the umbrella policy, our review is limited to the policy's terms. *See Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I.1994) ("In situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.") (citing *Greenwald v. Selya & Iannuccillo,* 491 A.2d 988 (R.I.1985)).

■ The umbrella policy consists of Coverage A and Coverage B. The plaintiffs argue that both sections afford the decedent with UM coverage.

Coverage A, entitled "Excess Follow Form Insurance," provides in pertinent part:

"A. We will pay on behalf of the Insured those sums in excess of the total applicable limits of Scheduled Underlying Insurance that the Insured becomes legally obligated to pay as damages provided the damages would be covered by Scheduled Underlying Insurance[.]

"B. Coverage A shall follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance[.]

"C. *Coverage A of this policy will not, in any event, provide broader coverage than that provided by Scheduled Underlying Insurance.*" (Emphasis added.)

An umbrella policy "cover[s] losses that exceed the basic or usual limits of liability provided by other polices." Black's Law Dictionary 822 (8th ed. 2004). In this case,

that other policy is the National Union policy. According to the clear and unambiguous language of the umbrella policy, the insurance provided under Coverage A "will not * * * provide broader coverage than that provided by [the National Union policy]." Therefore, because we are satisfied that the decedent is not entitled to UM coverage under the National Union policy, it follows that plaintiffs cannot claim UM coverage from Coverage A of the umbrella policy.

With respect to Coverage B, plaintiffs argue that they are entitled to insurance benefits based on a self-insured retention expressed in the umbrella policy. Item 4 on the declarations page of that policy sets a self-insured retention of $100,000 per occurrence for Coverage B. The schedule of underlying insurance lists a self-insured retention for UM liability. Coverage B states that "[w]e will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury not covered by Scheduled Underlying Insurance[.]"

We respectfully reject this contention. The umbrella policy's provisions that pertain to the self-insured retention simply provide that the insurance carrier will pay certain fees in excess of those that the insured becomes legally obligated to pay and for which the insured is not otherwise covered by a primary insurance policy listed in the scheduled underlying insurance. But in this case we are satisfied that defendants are not obligated by contract or law to pay plaintiffs UM insurance. Accordingly, in the context of this case, this section of the umbrella policy is of no moment.

## C

### The Rental Agreement

After a careful examination of the rental agreement, we are satisfied that it did not provide the decedent with UM coverage. Even if a fact-finder concluded that the initials on the portions of the rental agreement rejecting coverage were not decedent's, there is no dispute that Lynch did not affirmatively request insurance protection or, notably, pay the costs associated with that coverage. Furthermore, the back of the rental agreement reads: "Alamo provides no * * * uninsured or underinsured motorists protection * * * pursuant to this [a]greement, and renter expressly rejects and waives such coverage from Alamo." Simply put, Lynch, at best, was a third-party beneficiary to the National Union policy. But in agreeing to the terms of the rental agreement and declining to purchase additional insurance products, Lynch clearly elected to forgo UM coverage to the extent that such coverage was available. Accordingly, pursuant to the clear and unambiguous language of the rental agreement and by his contractual election, the decedent was without UM coverage.

### Conclusion

For the reasons stated in this opinion, we affirm the grant of summary judgment. The record may be remanded to the Superior Court.