**Supreme Court**

No. 2013-305-Appeal.
(PP 12-4239)

William A. Bettez            :

          v.                 :

Robert A. Bettez et al.      :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

William A. Bettez           :

v.           :

Robert A. Bettez et al.        :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on April 8, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The plaintiff, William A. Bettez (William),[1] appeals from a Superior Court judgment in favor of the defendants, Robert A. Bettez (Robert), Ronald A. Bettez (Ronald), and Attorney Daniel Stone (Attorney Stone) as co-executors of the estate of Rudolph T. Bettez (collectively, defendants), dismissing the plaintiff's appeal and sustaining the decision of the Probate Court of the Town of Scituate allowing the last will and testament of Rudolph T. Bettez (Rudolph). After considering the arguments advanced by counsel, we are satisfied that cause has not been shown and that the appeal may be decided at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

Rudolph passed away on December 4, 2010. He was survived by his three sons—Robert, Ronald, and William—as well as his second wife, Joyce Bettez (Joyce). Rudolph also had a daughter, Deborah Bettez, who predeceased him but left two children, Sarah Vernon and Jesse

---

[1] First names may be used throughout this decision for ease of reading. We intend no disrespect.

King. Rudolph's four children were from his first marriage, to Barbara Bettez (Barbara), who passed away in December 2003. Before Barbara passed away, she and Rudolph had entered into a joint revocable trust agreement on February 13, 2003 (Bettez Trust). The Bettez Trust was drafted by Attorney Stone. The Bettez Trust became an irrevocable trust when Barbara passed away.

After Barbara's death, the relationship between Rudolph and William steadily deteriorated, to the point, according to William, that he became the "black sheep" of the family. William testified at his deposition that "if it wasn't for my mama, I would have beat the [****] out of [Rudolph] after he hit [Barbara]." In addition to the animosity arising from the alleged domestic discord, the relationship between Rudolph and William was strained based on their financial dealings. On December 23, 2003, William executed a promissory note in favor of his father, whereby William was to repay a loan made in the amount of $130,200 that was paid to a company controlled by William—Global Industries & Technologies, Inc. (Global). In order to obtain the funds necessary to loan the money to Global, Rudolph secured a bank loan. The terms of the loan were the same terms that were extended to William in the promissory note. However, William failed to make the monthly payments in accordance with the terms of the promissory note; and, in 2006, Rudolph settled the debt owed to the bank by using proceeds from the sale of a general store he owned.

Further tension arose because of William's chronic failure to pay rent that was owing to Rudolph, his landlord, in a timely manner. William rented both a residential and a commercial property from his father. Rudolph—through Attorney Stone—communicated with William regarding the terms of the lease for the two properties. On August 12, 2008, Attorney Stone wrote that the continued nonpayment or late payment of rent would no longer be tolerated by

Rudolph. William subsequently entered into a new lease agreement with Rudolph in November 2009, which provided that William would pay a reduced rent on a weekly basis. Despite the new agreement, William continued to pay rent sporadically.

There were also other nonrecurring financial dealings that caused further tension between Rudolph and William. For example, William maintained an outstanding account at a general store owned by Rudolph. When the store eventually was sold, William claimed that Barbara "forgave" the outstanding debt owed at the store. Also, in early 2009, William received $18,000 from Rudolph to refurbish a truck. Further evidence suggests that William received an extra $10,000 from Rudolph when disbursements were being made by Rudolph to his children from a trust fund.

Joyce and Rudolph began dating in March 2009, and on October 3, 2009, they were married. In anticipation of his marriage, Rudolph contacted Attorney Stone to prepare a prenuptial agreement and a new will. In late September 2009, Rudolph executed both documents. The will, according to Attorney Stone, took several drafts to complete and some of the changes had been discussed by Rudolph for several years. The new will excluded William from a share of the Bettez Trust. However, it also released William from any debts owed to Rudolph. The will specifically explained these changes as follows:

> "My omission to make any other provision herein for my said son [William], is due to my belief that funds heretofore advanced to him, as loans, as rent not paid by him for properties occupied by him personally and by his business interests, and otherwise, constitute adequate provision for him in respect of my estate, the estate of my late spouse, Barbara Bettez and the Bettez Trust."

The intentional exclusion of William as a beneficiary was confirmed by Joyce, who testified in a deposition that Rudolph had declared that "[William] had already had his share." Furthermore, it

was William's observation that, during the brief courtship of Rudolph and Joyce, Rudolph was "of his own mind."

On December 22, 2010, Robert petitioned the Probate Court of the Town of Scituate to admit his father's September 2009 will to probate. On July 20, 2012, the will was admitted to probate by a consent order entered by the Probate Court of the Town of Scituate and agreed to by all parties. On August 6, 2012, William filed a claim of appeal in the Probate Court of the Town of Scituate; and, later, on August 17, 2012, he filed his reasons of appeal in Superior Court. William alleged that the judgment of the Probate Court of the Town of Scituate should be vacated because Rudolph lacked testamentary capacity when he executed the will and because he was subject to undue influence.[2] The defendants filed a motion for summary judgment that was heard before the Superior Court on March 19, 2013. On April 17, 2013, the Superior Court justice issued a written decision granting defendants' motion and finding that defendants were entitled to judgment as a matter of law. The Superior Court justice entered final judgment on April 23, 2013. The plaintiff filed a timely notice of appeal to this Court.

## Standard of Review

"This Court reviews <u>de novo</u> a trial justice's decision granting summary judgment." <u>Sola v. Leighton</u>, 45 A.3d 502, 506 (R.I. 2012) (quoting <u>Lynch v. Spirit Rent-A-Car, Inc.</u>, 965 A.2d 417, 424 (R.I. 2009)). "Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" <u>Id.</u> (quoting <u>Plunkett v. State</u>, 869 A.2d 1185, 1187 (R.I. 2005)).

---

[2] Subsequently, plaintiff abandoned his claim that Rudolph lacked testamentary capacity. Accordingly, plaintiff's sole challenge is that Rudolph was subject to undue influence when he executed the will.

"Although summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" Sullo v. Greenberg, 68 A.3d 404, 407 (R.I. 2013) (quoting Mutual Development Corp. v. Ward Fisher & Co., 47 A.3d 319, 323 (R.I. 2012)).

## Analysis

### Undue Influence

The plaintiff alleges that defendants collectively exerted undue influence over Rudolph in order that he exclude William from any share of his estate. Specifically, plaintiff alleges that Attorney Stone used knowledge that he obtained when he served as counsel for plaintiff to assist in unduly influencing Rudolph, in concert with plaintiff's siblings. The plaintiff alleges that there existed a conflict of interest with Attorney Stone and that, therefore, his involvement in drafting the documents was improper.[3] Furthermore, plaintiff asserts that it was Barbara's intent that the Bettez children each receive an equal distribution from the trust and that his siblings unduly influenced Rudolph to change the planned equal-distribution scheme.

"Undue influence is the 'substitution of the will of [the dominant] party for the free will and choice [of the subservient party].'" In re Estate of Picillo, 99 A.3d 975, 982 (R.I. 2014) (quoting Filippi v. Filippi, 818 A.2d 608, 630 (R.I. 2003)). "When determining what constitutes undue influence, 'a trial justice ordinarily examines the totality of [the] circumstances, including the relationship between the parties, the physical and mental condition of the [subservient party], the opportunity and disposition of [the] person wielding influence, and his or her acts and declarations.'" Id. (quoting Filippi, 818 A.2d at 630). Ordinarily, "[t]he question of whether

---

[3] Notably, Attorney Stone testified at his deposition that he performed occasional corporate work for William and the entities with which William was associated.

- 5 -

undue influence exists is a fact-intensive inquiry." Id. (quoting Filippi, 818 A.2d at 630). However, G.L. 1956 § 33-23-10(c) provides in pertinent part:

> "If the probate appeal can be decided as a matter of law, upon motion of the appellant or any party to the proceedings pursuant to § 33-23-8(e), the matter shall be assigned to the formal and special cause calendar where a briefing schedule shall be established and the matter further assigned to a justice of the superior court for decision based upon the record and the briefs submitted."

It is precisely a situation like the one before us—in which the nonmoving party fails to produce any evidence—that § 33-23-10(c) appropriately is employed to decide this case on summary judgment. See Campbell v. Rhode Island Hospital Trust Co., 125 A. 220, 221 (R.I. 1924) ("The evidence of opportunity, unaccompanied by evidence, direct or indirect, that such influence was exerted, does not warrant the submission of the issue to the jury, nor will it support a finding that the instrument was the result of undue influence. There is an entire absence of direct evidence of such influence, nor was there anything in the case from which a reasonable inference to that effect can be drawn. It is true, as the appellants argue, that undue influence, from its nature, is usually exerted secretly and is difficult of proof. The lack of evidence, however, does not warrant a resort to conjecture to establish its existence."). The record before us not only supports the conclusion that Rudolph was not unduly influenced when he executed the will, but also that plaintiff has failed to raise any disputed issue of material fact that would preclude the grant of summary judgment.[4]

The plaintiff's primary contention, that Attorney Stone used certain knowledge that he obtained while representing plaintiff to then later unduly influence Rudolph, is, as the trial justice

---

[4] When asked at his deposition for the bases of his assertions that his siblings and Joyce exerted undue influence over Rudolph, William replied with comments such as: "I don't know, that would be a million dollar question[,]" "I don't know how[,]" and "[b]ecause [Joyce] couldn't stand me. She hated me because I wouldn't put up with her bull[* * * *]."

put it, "pure, unsubstantiated speculation that is wholly unsupported in the record." Rather, in his will, Rudolph specifically addressed why he decided to exclude William from any share in the Bettez Trust. The reasons enumerated in the will—that William already had received substantial sums from Rudolph that constituted an adequate provision—are supported by the record and are unchallenged by William. For example, William acknowledged that he did not make the payments due on the $130,200 promissory note. William also admitted that he paid rent "[a]s much as possible" but agreed that this meant that he did not pay rent on a regular or timely basis. The provision excluding William from the Bettez Trust reflected Rudolph's belief that, by the forgiveness of his numerous and substantial outstanding debts, William was adequately compensated. The plaintiff's broad-based allegations that Attorney Stone—in conjunction with William's siblings—somehow exerted undue influence over Rudolph are not sufficient to withstand a motion for summary judgment without the production of "competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" Sullo, 68 A.3d at 407 (quoting Mutual Development Corp., 47 A.3d at 323).[5]

Even in a probate appeal proceeding such as this, at summary judgment, the nonmoving party bears the "affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citing St. Paul Fire & Marine Insurance Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)). When the nonmoving party fails to carry his or her burden, then summary judgment is appropriate and the moving party is entitled to judgment as a matter of law. See id. The trial justice's decision was predicated on the fact "that no evidence of undue influence has been set forth in opposition to the

---

[5] The plaintiff did not allege any facts suggestive of undue influence in the traditional sense, including evidence bearing on "the relationship between the parties, the physical and mental condition of the grantor, the opportunity and disposition of a person wielding influence, and his or her acts and declarations." Tinney v. Tinney, 770 A.2d 420, 438 (R.I. 2001).

- 7 -

instant [m]otion." We agree with this determination by the trial justice. We are satisfied that summary judgment was proper because "the 'pleadings, depositions, * * * [and] the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" See Sola, 45 A.3d at 506 (quoting Plunkett, 869 A.2d at 1187).[6]

## Conclusion

For the reasons set forth above, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

---

[6] The record discloses that plaintiff requested the trial justice to either deny the motion for summary judgment or, in the alternative, to defer ruling on the motion as premature due to the existence of a separate proceeding related to the Bettez Trust before the Superior Court for Kent County. However, plaintiff does not explain or provide a meaningful discussion of why the existence of another action should preclude the entry of summary judgment in this case. Therefore, we decline to address the issue. See Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.").



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      William A. Bettez v. Robert A. Bettez et al.

**CASE NO:**      No. 2013-305-Appeal.
(PP 12-4239)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  April 29, 2015

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

      For Plaintiff:  Jonathan L. Stanzler, Esq.

      For Defendants:  Barry J. Kusinitz, Esq.