INSURANCE COMPANY OF NORTH AMERICA, f/k/a INA Insurance Company of Illinois, Plaintiff-Appellant, v. HOME AND AUTO INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)    No. 1—92—2672

Opinion filed December 9, 1993.

Modesto, Reynolds & McDermott, of Chicago (Francis William Golden, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Mary A. Sliwinski, and Lloyd E. Williams, Jr., of counsel), for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

This appeal draws us deep into the catacombs of insurance policy English, a dimly lit underworld where many have lost their way. We are asked to decide the comparative liability of two insurers which offer primary coverage for the same injury under identically worded clauses in their policies—clauses that, to borrow the insurance industry trope, "mirror" one another. The issue is whether the insurers share the liability equally or in proportion to the limits of each policy. The trial court relied on *Georgia Casualty & Surety Co. v. Universal Underwriters Insurance Co.* (5th Cir. 1976), 534 F.2d 1108, and concluded that the insurers must share the loss in proportion to their policy limits. However, three years after *Georgia Casualty*, the same circuit traveled the same path and reached an opposite result in *McDaniels v. Great Atlantic & Pacific Tea Co.* (5th Cir. 1979), 602 F.2d 78, holding that the insurers must share liability equally. We believe the dissent in *Georgia Casualty* and the opinion in *McDaniels* are more carefully reasoned than the opinion in *Georgia Casualty*, and so we reverse.

Here is the clause, contained in both policies, to which we are asked to lend meaning:

"**Other Insurance**

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. ***

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the following applicable contribution provision:

**a. Contribution by equal shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

**b. Contribution by limits.** If any of such other insurance does

not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Our case involves $1^1/2$ years of continuous lead poisoning. Sabrina Reed ingested lead-based paint chips while she lived in an apartment building from January 1, 1976, to June 30, 1977. The building was owned by Central National Bank. Sabrina's mother filed a personal injury claim for Sabrina against the bank. Three policy periods were triggered. Insurance Company of North America (INA) issued one policy that provided coverage from April 1, 1973, to April 1, 1977; Home and Auto Insurance Company (HOME) issued the other policy, which covered the period from April 1, 1977, to April 1, 1978. INA and HOME together settled the personal injury action for $285,000. INA paid $259,090.91; HOME paid $25,909.09. INA reserved a right to seek further payment from HOME.

After the settlement, INA filed a declaratory judgment action arguing that each insurer contribute equal shares toward the settlement, based on the language of both policies. HOME argued that each insurer should contribute an amount proportional to the limits of coverage. On cross-motions for summary judgment, the trial court, relying on *Georgia Casualty*, found that the policy language required *pro rata* sharing and entered judgment for HOME. INA appeals.

The parties agree that the three policy periods provide primary coverage. INA's liability limit is $500,000 for each of two policy periods; HOME's liability limit is $100,000 for one period. The total coverage is $1,100,000. HOME argues it is only required to pay one-eleventh of the $285,000 settlement. INA argues that the settlement should be shared equally up to policy limits.

In *Georgia Casualty*, two insurers settled a personal injury action. As here, one insurer argued it should pay a *pro rata* share of the settlement while the other argued the insurers should pay equal amounts. The court first determined both insurers were primarily liable for the loss. It then considered whether clause (a), the equal shares clause, or clause (b), the *pro rata* clause, applied to the apportionment of the loss. The court concluded that since neither policy included an unconditional promise to contribute equal shares, then neither policy "provided for" contribution by equal shares. The court reasoned that the condition of clause (a), "If all of such other valid *** insurance provides for contribution by equal shares," was not met, and the condition of clause (b), "If any of such insurance

does not provide for contribution by equal shares," was met. The court then ordered a *pro rata* allocation. *Georgia Casualty*, 534 F.2d at 1111.

There was a dissent in *Georgia Casualty* that stated, in part:

"Where, as here, both insurers have taken the evolutionary step of including identical language agreeing to accept 'equal shares,' it seems to me inaccurate to say that the policies do not 'provide for' contribution by equal shares simply because mirror image clauses are phrased in permissive rather than mandatory language. Each was written without knowledge of what other policy it would face and necessarily could not be worded with mandatory precision." *Georgia Casualty*, 534 F.2d at 1112 (Clark, J., dissenting).

Three years later, the same court, in *McDaniels*, adopted the reasoning of the dissent in *Georgia Casualty*, without referring to it or citing to the case. *McDaniels* also involved a dispute between two insurance companies over settlement costs. Both policies included the same "other insurance" clause. Following the dissent analysis in *Georgia Casualty*, the *McDaniels* court refused to construe the words "provide for" to require an unconditional promise. The court held that by including the "equal shares" language in the policies, both insurers *provided for* contribution by equal shares. The court also noted that neither policy provided an alternative other than equal as an exclusive basis for computing contribution and so held that the insurers must contribute equal shares of the settlement. *McDaniels*, 602 F.2d at 83.

The intended meaning of the words "provide for" is the heart of the matter. If we interpret the words to mean that an insurer commits unconditionally to contribute equal shares, an unreasonable conclusion results. Before an insurer can be said to have provided for equal shares, it must demand equal and only equal contribution. If only one of several insurers fails to demand equal contribution, then loss is allocated by the *pro rata* method, even though every other insurer demands equal contribution and none demands *pro rata* allocation. As the dissent in *Georgia Casualty* pointed out, this interpretation frustrates the insurance industry's quest for uniform policy language and creates uncertainty about loss sharing.

■ If uniformity is a desirable industry goal to be encouraged, and ambiguity a nuisance to be discouraged, then it makes sense to conclude that the insurers intended a permissive rather than mandatory reading of the phrase and conditional clauses. If an insurer *allows* for equal contribution, we believe it is safe to conclude that the insurer "provides for" equal contribution. If an insurer does

not provide for equal shares, that is, provides for *only pro rata* allocation, then agreement to share loss equally is withdrawn and the alternative *pro rata* contribution is adopted. In this case neither insurer "provided for" only *pro rata* allocation exclusively. We believe the insurers demonstrated an intent to share loss equally by including "equal shares" language in the policies.

Three other Federal cases have held that equal contribution is appropriate under circumstances similar to those in this case. See *Employers Casualty Co. v. Employers Commercial Union Insurance Co.* (5th Cir. 1981), 632 F.2d 1215; *Ryder Truck Rental, Inc. v. United States Fidelity & Guaranty Co.* (E.D. Mo. 1981), 527 F. Supp. 666; *Commercial Union Assurance Cos. v. Aetna Casualty & Surety Co.* (D.N.H. 1978), 455 F. Supp. 1190.

■ INA raises a second issue on appeal: that the trial court erred in determining the limit of INA's liability was $1 million and the limit of HOME's liability was $100,000. The liability limits stated in the INA policy are $500,000 for each occurrence and $500,000 aggregate. The liability limits stated in the HOME policy are $100,000 for each person and $300,000 for each occurrence. INA contends its policy limit is $500,000 and HOME's limit is $300,000. We disagree and concur with the trial court.

Words in an insurance policy must be given their plain and ordinary meaning. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) The INA policy states:

"Aggregate limits of liability stated in the Declarations shall apply separately to each annual period, commencing with policy inception."

INA does not dispute that two of its policy periods were triggered by the injury in this case. The language of the policy is clear: the aggregate, $500,000, applies "separately" to each of the two policy periods triggered. So INA's total liability is $1 million.

HOME's liability is limited as follows:

"The limit of bodily injury liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence ***."

In this case one person was injured as the result of an occurrence. INA does not dispute that the ongoing injury constitutes one occurrence. So the applicable limit of liability based on the HOME policy language is $100,000.

We reverse the order of the trial court granting summary judgment for HOME and denying summary judgment for INA on the issue of contribution towards the settlement and remand for entry of

an order consistent with this opinion. The occurrence in this case triggered three successive policy periods, with one insurer liable for two policy periods and a second insurer liable for the third. As a result, equal contribution is computed by policy periods triggered rather than insurers involved. We affirm the decision of the trial court that INA's liability limit is $500,000 for each policy period triggered and HOME's liability limit is $100,000.

Affirmed in part; reversed and remanded in part.

JOHNSON and HOFFMAN, JJ., concur.