Ronald KOZIOL et al.

v.

**PEERLESS INSURANCE COMPANY.**

No. 2010–244–Appeal.

Supreme Court of Rhode Island.

April 11, 2012.

Michael F. Horan, Esq., Pawtucket, for Plaintiff.

Kevin J. Holley, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

When the plaintiffs' efforts to act as general contractors on a new home foundered because of faulty work performed by a framing subcontractor, they made a claim on the homeowner's insurance policy issued to them by the defendant, Peerless Insurance Company. After the defendant denied the claim, citing two exclusions in the policy, the plaintiffs filed a declaratory-judgment action against the carrier in the Providence County Superior Court. A hearing justice determined that the terms of the policy were ambiguous. Consequently, she construed the policy against the insurer and entered judgment for the plaintiffs. The defendant has timely appealed to this Court, arguing that the trial justice erred in her determination that the insurance contract was ambiguous. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts & Travel

The facts of this case are clear and undisputed. The plaintiffs entered into an agreement with a subcontractor to frame their new home. The framer's work, however, was deficient to such an extent that the building official of the Town of Cumberland refused to approve

the work, forcing plaintiffs to incur the additional expense of bringing the home into compliance with the building code. The plaintiffs made a claim on their homeowner's insurance policy for those extra expenses with their carrier, Peerless. It is noteworthy that in addition to the base coverage provided by the homeowner's policy, plaintiffs had paid an extra premium for what was titled "Homeowners Special Ultra Plus Coverage."[1] *See* Appendix A. That "Ultra Plus" endorsement was set forth under the "base coverages and premiums" section of the policy's premium outline. Also, embedded at page seventeen of the policy was a description of the enhanced Ultra Plus coverage. At top of that page, a headline declares:

> "MORE PROTECTION FOR LESS! For a nominal premium charge, your Homeowners Policy with Special Ultra Plus Coverage provides you with a lot of protection."

This statement is followed by a chart that lists "property coverages" and the total amount of coverage for each line item. One of the entries on the chart states, "Ordinance or Law Compliance for Buildings *(required after a loss )*". Under the total amount of coverage for this category, it says simply "Included." Significantly, the term "loss" is not defined in the summary, the definitions section, or elsewhere in the policy. At the bottom of page seventeen, there is a note that says:

> "The information contained in this summary is a brief description only. The summary is not an insurance contract. Coverages may vary from state to state and are subject to change. For these reasons, please consult your agent, policy and endorsements for a complete description of coverages and limits."

The plaintiffs contended that the claim arising from their framer's shortcomings was covered by the terms of the Special Ultra Plus Endorsement. Peerless, however, denied coverage, and adding insult to injury, indicated that it would not renew their policy.

Consequently, plaintiffs filed a declaratory-judgment action. In due course, Peerless filed a motion for summary judgment, and a hearing was held before a justice of the Superior Court on April 7, 2009. On May 4, 2009, in a bench decision, the motion justice ruled that the policy was ambiguous. She found that the ambiguity stemmed primarily from the summary found on page seventeen. After analyzing the summary, the motion justice found that an ordinary reader would reasonably understand the policy to cover "ordinance compliance" for losses irrespective of whether the loss was a "covered loss." Therefore, in accordance with our well-settled law, she construed the policy language against the insurer, and denied the motion for summary judgment. In light of the motion justice's ruling, the parties jointly requested that final judgment be entered by the court. This appeal ensued.

## II

### Standard of Review

 "Whether a contract is ambiguous is a question of law." *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083 (R.I.2010) (citing *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 558 (R.I.2009)); *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I.2005). "A trial court's ruling concerning ambiguity is reviewed by this Court on a *de novo* basis." *Id.* (citing *Young*, 973 A.2d at 558). If an ambiguity

---

1. The plaintiffs paid an increased annual premium of $122 for this additional coverage.

is found, it is strictly construed in favor of the insured. *See id.* at 1085 (citing *Aetna Casualty & Surety Co. v. Sullivan,* 633 A.2d 684, 686 (R.I.1993); *Bartlett v. Amica Mutual Insurance Co.,* 593 A.2d 45, 47 (R.I.1991)).

## III

### Arguments of the Parties

Peerless argues that two specific exclusions in the homeowner's policy justify its denial of coverage. First, it argues that "[t]he plaintiffs' insurance policy specifically excludes coverage for faulty workmanship * * *." The language of this purported faulty workmanship exclusion meanders in a somewhat disjointed fashion from pages thirty-one to thirty-three of the policy. Second, Peerless contends that plaintiffs' claim is thwarted by the "Ordinance or Law" exclusion. The terms of that exclusion provide:

"1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

"a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy."

Peerless contends that this policy language, when read along with the Ultra Plus coverage summary, is unambiguous and that the hearing justice erred when she concluded otherwise.[2] The plaintiffs, on the other hand, argue that the exclusionary terms of the policy, when read in concert with the coverage summary of the Special Ultra Plus endorsement, are am-

biguous because the summary does not state that the loss to the insured must be a "covered loss" and the other terms of the policy do not clarify that ambiguity in any meaningful way. On the contrary, plaintiffs argue that an ordinary reader could reasonably believe that their losses were covered according to the policy.

## IV

### Analysis

#### What is a loss?

 There can be little dispute that when they undertook the significant remedial measures that were necessary to make their home compliant with the building code, plaintiffs suffered a loss. However, Peerless maintains that this is not the type of loss that would provide coverage under the policy, and that this type of loss is in fact specifically excluded when one reads the policy in its entirety. "In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally." *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983) (citing *Colagiovanni v. Metropolitan Life Insurance Co.,* 57 R.I. 486, 190 A. 459 (1937)). It is well-settled that this Court "shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Lynch v. Spirit Rent–A–Car, Inc.,* 965 A.2d 417, 425 (R.I.2009) (quoting *Mallane v. Holyoke Mutual Insurance Co. in Salem,* 658 A.2d 18, 20 (R.I.1995)). The terms of the policy shall be given their plain, ordinary, and usual meanings. *See Bliss Mine Road Condominium Association,* 11 A.3d at 1083 (citing *Mallane,* 658 A.2d at 20). This Court "considers the policy in its entirety" and will not strain to find an ambiguity by "viewing a word in

---

**2.** For the purposes of this opinion, we shall refer to the first provision as the "faulty work-manship" exclusion, and the second provision as the "ordinance or law" exclusion.

isolation or by taking a phrase out of context." *Id.* (quoting *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990)). Indeed, as this Court often has said, we shall "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Id.* (quoting *Mallane,* 658 A.2d at 20). Nonetheless, we will hold a policy's terms to be ambiguous if, in light of this analysis, they are "reasonably susceptible of different constructions." *Id.* at 1084 (quoting *Westinghouse Broadcasting Co. v. Dial Media, Inc.,* 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). The subjective intent of the parties is irrelevant in reaching this conclusion. *See id.* at 1083–84. An ambiguity in an insurance policy is strictly construed against the insurer. *See id.* at 1085 (citing *Sullivan,* 633 A.2d at 686; *Bartlett,* 593 A.2d at 47).

We have no trouble concluding that, despite being cloaked with the label "summary", the terms cited by plaintiffs are part of their homeowner's insurance policy and that they should be considered together with the other terms of the agreement. In *Sentry Insurance Co. v. Grenga,* 556 A.2d 998, 1000 (R.I.1989), this Court held that it was proper to consider a declaration page together with a "plain talk" insurance policy pamphlet—a separate and distinct document that explained the parties' insurance coverage. Here, the propriety of examining the coverage summary is nearly self-evident: it is not a disconnected document, but rather is integrated within the four corners of the contract itself. The defendant cites this Court's holding in *Streicker* to support its argument, but the circumstances here are markedly different from those presented in that case, in which the plaintiff's argument for ambiguity rested on an interpretation of isolated language found in an "Information Digest" that the insurance company sent to the insureds, separate and apart from the policy. *See Streicker,* 583 A.2d at 552.

Peerless also maintains that coverage for "ordinance or law compliance," regardless of the language in the coverage summary, applies only after a "covered loss". Although we do not doubt that Peerless may have intended that result in crafting its policy, in our opinion, after considering the totality of the agreement, the terms of the insurance contract are ambiguous. We begin with the language of the summary, which boasts that the Special Ultra Plus endorsement provides "a lot of protection" for a "nominal premium charge." The phrase "covered loss" does not appear in the summary. The summary does state, "Ordinance or Law Compliance for Buildings *(required after a loss)* ... Included." In our opinion, an ordinary reader would interpret those terms to mean that if an insured suffers a "loss," and as a consequence of that loss needs to repair the property to comply with applicable laws, then the cost of the repair is covered by the policy. Nonetheless, a reasonably intrepid reader might be left with a question: what is a loss? We agree with Peerless that the notation at the bottom of the summary directing readers to consult the policy "for a complete description of coverages and limits" encourages an insured to continue reading. *See Streicker,* 583 A.2d at 552–53 (considering policy language when the information digest contained a disclaimer directing a reader to the policy for full coverage details). Thus, the question that lies at the heart of this analysis is whether the policy's other terms, when read in concert with the information on the summary page, are sufficiently clear so that an ordinary reader would understand the nature

of the coverage—what is covered, and what is not.

In venturing beyond the relative safety and clarity of the insurance policy's summary page, an adventurous reader is soon tangled in a bewildering thicket of verbiage; he is tasked first with slicing his way through a Gordian knot of sections, subsections, cross-references and clauses, and then with making sense of the path he has cut.[3] The plaintiffs' policy defines neither the term "loss" nor the phrase "covered loss"; the only definition bearing any similarity is for the term "occurrence," which is defined simply as "an accident * * * which results, during the policy period, in: * * * '[p]roperty damage.'"[4] Intuitively, a steadfast reader might seek an alternative route and look for a section of the Special Ultra Plus endorsement titled "Ordinance or Law Compliance."[5] Alas, he would discover that there is no such section: the endorsement contains no apparent explanation of anything called "ordinance or law compliance".[6]

The only reference to "ordinance or law" in the Special Ultra Plus endorsement is found in the section labeled "Conditions," under the subheading "loss settlement." It says: "Loss for damage resulting from a Peril Insured Against, to covered property will be settled on the basis of any

ordinance or law that regulates the construction or repair, or requires demolition of this property." In essence, Peerless argues that plaintiffs should have turned to the main body of the policy—and not to the terms of the endorsement—and consulted Section I, which is entitled "Perils Insured Against." Under that title is a separate subpart: "Exclusions." In subsection (2)(c)(2) of Exclusions, plaintiffs would have discovered, as if on a scavenger hunt, the terms of the faulty-workmanship exception.

Even assuming that plaintiffs reasonably could have been expected to weave their way through the policy, bouncing like a pinball from section to section to eventually reach the faulty-workmanship exclusion, we do not agree with Peerless that the language of the exclusion, when considered in light of the whole policy, is itself clear and unambiguous. The faulty-workmanship provision begins by stating, "We do not insure for loss to property described in Coverages A and B caused by any of the following. *However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.*" (Emphasis added.) In our opinion, the terms of this exclusion, when read in concert with the terms of the coverage summary for the Special Ultra Plus en-

**3.** Courts across the country have reached similar conclusions. *See, e.g., Insurance Co. of North America v. Home and Auto Insurance Co.,* 256 Ill.App.3d 801, 195 Ill.Dec. 179, 628 N.E.2d 643, 644 (1993) (observing that when interpreting an insurance policy, the court was required to travel "deep into the catacombs of insurance policy English, a dimly lit underworld where many have lost their way"); *Universal Underwriters Insurance Co. v. Travelers Insurance Co.,* 451 S.W.2d 616, 622 (Ky.Ct.App.1970) ("Ambiguity and incomprehensibility seem to be the favorite tools of the insurance trade in drafting policies. Most [insurance policies] are a virtually impenetrable thicket of incomprehensible verbosity.").

**4.** "Property damage" is further defined by the policy as "physical injury to, destruction of, or loss of use of tangible property."

**5.** The provisions of the Special Ultra Plus endorsement are detailed in a seven-page form that is incorporated into the eighty-page policy.

**6.** We believe it is noteworthy that in the coverage summary "ordinance or law compliance" is listed under the category "property coverage." The "property coverage" section of the Special Ultra Plus endorsement lists several additional coverages but makes no reference to ordinance or law compliance.

dorsement, create an ambiguity. The coverage summary comforts an insured that the extra endorsement "provides a lot of coverage" and that ordinance or law compliance is "included." Thus, an ordinary purchaser could reasonably conclude that the additional endorsement, for which he has paid an increased premium, covers the "ensuing loss" resulting from having to comply with the building code, even if the initial loss due to faulty workmanship was not covered.[7]

### The Ordinance or Law Exclusion

 We reach the same conclusion with respect to the second policy exception cited by Peerless, the "Ordinance or Law" exclusion. The terms of that exclusion warn that the policy does not cover a loss caused by "any ordinance or law regulating the construction, repair, or demolition of a building or other structure, *unless specifically provided under this policy.*" (Emphasis added.) Again, an ambiguity arises when these terms are read together with the terms of the Special Ultra Plus coverage summary, which promises coverage above and beyond the base policy, and says that "Ordinance or Law Compliance for Buildings (*required after a loss* )" is "Included." An ordinary reader could reasonably conclude that the endorsement specifically provides for losses caused by ordinance compliance, which would vitiate the exclusion found in Section I.

Our conclusion here was strongly portended by our holding in *Mallane*, 658 A.2d at 21. The plaintiff in *Mallane* sought uninsured-motorist coverage under his brother's automobile insurance policy. *See id.* at 19. The declaration page of the policy, which the Court held was part of the agreement, designated plaintiff as a "named driver." *See id.* The defendant insurance company argued that the plaintiff nonetheless was not an "insured" under the terms of the policy because he was not a "covered person", and that the terms of the policy were unambiguous. *See id.* This Court agreed with the plaintiff that the declaration page gave rise to an ambiguity, and that even when the Court considered the terms of the policy in their entirety, a reasonable reader would be warranted in concluding that a driver named on the declaration page was covered. *See id.* at 20–21. The *Mallane* court held that "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured." *Id.* at 21 (quoting *Lehrhoff v. Aetna Casualty & Surety Co.*, 271 N.J.Super. 340, 638 A.2d 889, 892 (1994)). We hold the same to be true of a coverage summary that is incorporated into the insurance policy. *See id.; see also Grenga*, 556 A.2d at 1000 (holding that when a declaration page listed uninsured motorist coverage, but that coverage was not included in the policy, the insurance company was required to provide such coverage to the insured).

Like a declaration page, the contents of an insurance coverage summary—particularly when it is found within the four corners of the policy, as it is here—are of "paramount importance because it is com-

---

7. In its written argument, Peerless cites a number of jurisdictions that have found similar "faulty workmanship" provisions to be unambiguous. *See, e.g., Schultz v. Erie Insurance Group*, 754 N.E.2d 971, 976–77 (Ind.Ct. App.2001); *Smith v. State Farm Fire and Casualty Co.*, 109 N.C.App. 77, 425 S.E.2d 719, 721 (1993). To be clear, our holding here is not that the terms of the faulty-workmanship exclusion, standing alone, are ambiguous. On the contrary, the ambiguity becomes apparent only when we read the policy, as we must, in its totality together with the terms of the coverage summary. Therefore, our holding does not conflict with those of the jurisdictions cited by Peerless.

mon knowledge that the detailed provisions of insurance contracts are seldom read by the consumer." *Grenga,* 556 A.2d at 1000 (citing *Elliott Leases Cars, Inc. v. Quigley,* 118 R.I. 321, 329, 373 A.2d 810, 813 (1977)). Even if purchasers do read the full terms of the agreement, as perhaps they should, there is no guarantee that they will be able to decipher them with much clarity. There can be no question that summaries written by an insurance company are necessarily relied upon by consumers as reasonably clear statements about what they have purchased. Even though the summary refers to itself as a "brief description" and directs the reader to "your agent, policy, and endorsements," it in no way gives any clue that the coverage will contradict, or be any different from, that which is set forth in the summary. Consistent with this reasoning and our own precedent, the ambiguities discussed here are strictly construed against the insurer, the author of the agreement. *See Bliss Mine Road Condominium Association,* 11 A.3d at 1085. Accordingly, we hold that the trial justice did not err when she determined that the policy was ambiguous, and further hold that the plaintiffs are entitled to coverage for the repairs that were necessary to bring their home into compliance with the applicable building code.

## V

## Conclusion

The judgment of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.

APPENDIX A

## MORE PROTECTION FOR LESS!

*For a nominal premium charge, your Homeowners Policy with Special Ultra Plus Coverage provides you with a lot of protection. Here's a coverage summary:*

| SECTION I - PROPERTY COVERAGES | Total |
|---|---|
| Appurtenant Structure Added to Dwelling Limit *(if needed)* | Included |
| Business Property: At Home<br> Away from Home | $5,000<br>$500 |
| Collapse (Caused by): Landslide<br> Water Below Ground | Included<br>Included |
| Credit Cards, Fund Transfer Card, Forgery and Counterfeit Money | $5,000 |
| Door/Window Lock Replacement *(if keys are stolen)* | $500 (50% co-pay) |
| Extra Mortgage Expense *(after a total loss)* Per Occurrence Limit<br> Mortgage Acquisition Costs | $12,000 ($250/mo)<br>$2,000 |
| Fire Department Service Charge | $1,000 |
| Glass Breakage by Birds, Rodents and Pets | Included |
| Loss Assessment | $10,000 |
| Ordinance or Law Compliance for Buildings *(required after a loss)* | Included |
| Personal Property Loss Settlement Provision | Replacement Cost (exceptions apply) |
| Personal Property Perils of Loss | Open |
| Refrigerated Products Spoilage *(due to a power outage)* | $1,000 ($50 ded) |
| Special Property *(for loss by theft, misplacing or losing)*:<br> Money, Bank Notes, Bullion, Gold, Silver, Platinum, Coins and Medals<br> Jewelry, Watches, Furs, Precious and Semi-Precious Stones<br> Silverware, Goldware and Pewterware<br> Firearms | <br>$500<br>$10,000 *<br>$10,000 *<br>$10,000 * |
| Tree Debris Removal *(no covered structure damage)* | $250 |
| Water Backup of Sewers and Drains | $5,000 ($250 ded) |
| Waterbed Sudden and Accidental Discharge | Included |

| SECTION II LIABILITY COVERAGES | Total |
|---|---|
| Claims Expense *(loss of earnings, etc.)*: Per Day Limit | $250 |
| Damage to Property of Others | $1,000 |
| Incidental Business Pursuits *(limited to specified activities)* | Included |
| Loss Assessment | $10,000 |
| Personal Injury Liability Protection | Included |

\* Subject to a per item limit

Note: The information contained in this summary is a brief description only. The summary is not an insurance contract. Coverages may vary from state to state and are subject to change. For these reasons, please consult your agent, policy and endorsements for a complete description of coverages and limits.

If you have questions about your *Homeowners Policy with Special Ultra Plus Coverage* or if you haven't heard about our *Personal Auto Policy with Ultra Plus Coverage*, please contact your agent.

Thank you for selecting us to service your insurance needs!