Justice ROBINSON,
concurring.
After long hesitation, I have now concluded that I am able to concur with the result reached by the majority in this exceedingly difficult case, although the route that I have traveled to reach that conclusion is somewhat different from that traveled by the majority.[5]
I begin by stating that it is patent (in my opinion) that the insurance policy at issue (a document which bears just one policy number for what is arguably two policies) is internally inconsistent and, therefore, ambiguous. It has been this Court’s holding that “an agreement is ambiguous only when it is reasonably and *956 clearly susceptible to more than one interpretation.” W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356 (R.I.1994); see Isbrandtsen v. North Branch Corp., 150 Vt. 575, 556 A.2d 81, 84 (1988) (“Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable.”); see also Lynch v. Spirit Renh-A-Car, Inc., 965 A.2d 417, 425 (R.I.2009); see generally Steven W. Feldman & James A. DeLanis, Resolving Contractual Ambiguity in Tennessee: A Systematic Approach, 68 Tenn. L.Rev. 73, 88 (2000). It is my considered opinion that, when looking at the language of Endorsement 4, Endorsement 7, and Endorsement 17 of the insurance contract at issue in this case, one could reasonably come to the conclusion that the insurance contract was intended to be one policy, with Quest being an additional insured for all terms in the policy (including Endorsement 17) because Quest falls within the language of Endorsement 4. However, one could also make a reasonable determination, based on the same language, that Endorsement 17 was intended to be a separate policy under which Quest was not an additional insured. Thus, the insurance contract is ambiguous. See Lynch, 965 A.2d at 425.
I recognize that there is precedent which would support the principle that, if the insurance contract is ambiguous, it must be construed against the insurance company (i.e., the contra proferentem canon of construction). See, e.g., Koziol v. Peerless Insurance Co., 41 A.3d 647, 651 (R.I.2012) (“An ambiguity in an insurance policy is strictly construed against the insurer.”); Elliott Leases Cars, Inc. v. Quigley, 118 R.I. 321, 328, 373 A.2d 810, 813 (1977) (noting that this Court has “in the past characterized [insurance contracts] as contracts of adhesion” and stating that “[i]t is well-established that ambiguities [in an insurance contract] will be construed so as to bear most heavily against the insurer”). However, that is simply one canon of construction and not the one which, in my opinion, is most properly applicable in the instant case. See Payless Shoesource, Inc. v. Travelers Companies, Inc., 585 F.3d 1366, 1372 (10th Cir.2009). “[A]s every judge knows, the canons of construction are many and their interaction complex. The canons are not mandatory rules.” Xilinx, Inc. v. Commissioner of Internal Revenue, 598 F.3d 1191, 1196 (9th Cir.2010) (internal quotation marks omitted); see also Chickasaw Nation v. United States, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (“For one thing, canons are not mandatory rules. They are guides that need not be conclusive.”) (internal quotation marks omitted). Indeed, with respect to the contra proferentem canon itself, the United States Court of Appeals for the Tenth Circuit has aptly stated:
“The sensibility of the contra proferen-tem canon of construction * * * rests in large measure on an assumption of unequal bargaining strength between the seller and purchaser, * * * supposing as it does the prototypical case of a large insurance company essentially dictating its terms in an adhesion contract to individuals with relatively little bargaining power. It is less clear whether and to what degree the doctrine has an appropriate role to play when the contracting parties are as sophisticated and able as [the companies involved in the case] both assuredly are.” Payless Shoe-source, Inc., 585 F.3d at 1372 (internal quotation marks omitted); see also Wood River Pipeline Co. v. Willbros Energy Services Co. [241 Kan. 580], 738 P.2d 866, 872 (Kan.1987) (“The principle that doubtful language in a contract is construed against the drafter is of little *957 consequence * * * [when the] clauses were bargained for by two large and sophisticated companies of equal bargaining power, each acting through experienced persons.”).
In the instant case, where all of the involved parties are large, sophisticated entities which have ample experience with insurance contracts, it simply is not just[6] to strictly construe the Pinnacle policy against Pinnacle; there is no evidence that the Pinnacle policy is a contract of adhesion, nor that it would result in any of the inequities which the canon of contra prof-erentem was intended to prevent. While the contra proferentem canon can be an important tool in dealing with ambiguous contractual language, we should not, in this rather unusual case, have resort to that principle because the fog of ambiguity that otherwise envelops the Pinnacle policy can be dispelled by referring to extrinsic evidence — namely, the PSA entered into by Quest and Brown. See W.P. Associates, 637 A.2d at 356 (“If a document is susceptible to more than one interpretation, extrinsic evidence is admissible to aid in its interpretation”).
Initially, I note that I in no way reject the long line of cases indicating that the subjective intent of one of the contracting parties is not ordinarily germane to plumbing the meaning of contractual language. See Koziol, 41 A.3d at 651. In this instance, however, we are faced with (in the Pinnacle policy) an imperfect execution of what the PSA clearly reflects should have been produced; rather than looking at the subjective intent of each party, in my view, the Court should consider extrinsic evidence in an effort to glean the mutual intent of the parties. See Lexington Insurance Co. v. General Accident Insurance Co. of America, 338 F.3d 42, 47 (1st Cir.2003) (“If * * * a policy provision is ambiguous, the court may take extrinsic evidence as to intent * * *.”); Harrigan v. Mason & Winograd, Inc., 121 R.I. 209, 213, 397 A.2d 514, 516 (1979) (“[There is a] general rule which permits a court to consider extrinsic evidence where relevant to prove a meaning to which the language of the instrument is reasonably susceptible, whether or not it appears to the court to be plain and unambiguous on its face.”); see also Steven W. Feldman & James A. DeLanis, 68 Tenn. L.Rev. at 73 (“When courts interpret contracts, their purpose is to effectuate the parties’ mutual intent.”).
When I refer to considering extrinsic evidence in this case, I specifically have in mind the PSA between Quest and Brown. Even though the Pinnacle policy does not explicitly reference the PSA, it does, in Endorsement 4, provide that a “[n]amed [ijnsured” would include any “corporation, company, organization, estate or other entity but only to the extent [Brown] has agreed to do so.” See Haffenreffer v. Haffenreffer, 994 A.2d 1226, 1232 (R.I.2010) (stating that “[o]ur case law is clear that instruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract”) (internal quotation marks omitted). When one lays the PSA beside the Pinnacle policy, it is clear that the PSA enlightens one as to how the Pinnacle policy should have been worded. A thorough assessment of the PSA makes clear that, regardless of the ambiguous language in the Pinnacle policy, the mutual intent of Brown and Quest at the time they signed that PSA was for *958 Brown to name Quest as an additional insured on its commercial general liability insurance policy, not its professional liability insurance policy. See Hill v. M.S. Alper & Son, Inc., 106 R.I. 38, 47, 256 A.2d 10, 15 (1969) (“[W]e will * * * consider the situation of the parties and the accompanying circumstances at the time the contract was entered into, not for the purpose of modifying or enlarging or curtailing its terms, but to aid in the interpretative process and to assist in determining its meaning.”). Although the Pinnacle policy is ambiguous, the terms of the PSA indicate that the mutual intent of the parties was to exclude Quest from the insurance coverage provided in Endorsement 17. See Grun v. Pneumo Abex Corp., 163 F.3d 411, 420 (7th Cir.1998) (stating that, even where contract language is ambiguous, the court will look beyond it “where literal application of a text would * * * thwart the obvious intentions of its drafters”) (internal quotation marks omitted); White v. Roughton, 689 F.2d 118, 120 (7th Cir.1982) (“[T]he overriding purpose in construing a contract is to give effect to the mutual intent of the parties at the time the contract was made; and while the language of the contract is normally the best evidence of that intent, a court can properly disregard even unambiguous language when it is convinced that the parties meant something different from what they said.”). Therefore, in my judgment, Quest is not entitled to a defense and/or indemnification from Pinnacle (or Genesis). Accordingly, I concur with the majority’s conclusion, but not the route that they follow to reach that conclusion.

. Nothing that I say in this concurrence should be understood as suggesting that the analysis contained in the majority opinion is less than scholarly.

. See Harry G. Prince, Contract Interpretation in California: Plain Meaning, Parol Evidence and Use of the "Just Result” Principle, 31 Loy. L.A. L.Rev. 557, 650-51 (1998) ("In situations where the contract does not provide an answer, the concerns of justice should certainly be relevant to contract interpretation and construction.”).