May 31, 2024

**Supreme Court**

No. 2023-22-Appeal.
(PC 21-3708)

Josephson, LLC d/b/a The Moinian     :
           Group

         v.              :

Affiliated FM Insurance Company.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Josephson, LLC d/b/a The Moinian   :
Group

v.              :

Affiliated FM Insurance Company.   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  In early 2020, confirmed cases of the SARS-CoV-2 virus, commonly referred to and referenced herein as COVID-19, were reported throughout the United States.  Thereafter, Josephson, LLC d/b/a The Moinian Group (Moinian or plaintiff) brought this action against its insurance company, Affiliated FM Insurance Company (AFM or defendant) seeking coverage for losses sustained due to the COVID-19 pandemic.  After reviewing AFM's insurance policy, the trial justice determined that the presence of COVID-19 at Moinian's insured properties—standing alone—did not constitute "physical loss or damage" sufficient to implicate the coverage provisions.  The trial justice also concluded that the presence of individuals infected with COVID-19 (or suspected to

- 1 -

be infected with COVID-19) at Moinian's insured properties—standing alone—was insufficient as a matter of law to establish a "physical loss or damage."

Alternatively, in reviewing the insurance policy, the trial justice concluded that one of the exclusions—the Contamination Exclusion—unambiguously barred coverage because contamination, such as COVID-19, was expressly excluded under the terms of the insurance policy. For the reasons explained below, we assume without deciding that the presence of COVID-19 at Moinian's insured properties constitutes "physical loss or damage" and affirm the trial justice's determination that coverage is barred by the Contamination Exclusion.[1]

**Background**

The plaintiff avers that it is one of the largest privately held real estate investment companies in the country, with a portfolio exceeding twenty million square feet. Moinian's portfolio includes residential real estate holdings, commercial property, and hospitality locations. The defendant is a corporation authorized to issue insurance policies with its principal place of business in Johnston, Rhode Island.

---

[1] We express our gratitude for the insightful amici briefs filed in this case by United Policyholders, California Pizza Kitchen, Inc., Destination XL Group, Inc., and Lerner Corporation; 5.11 ABR, Corp.; and American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

In September 2019, Moinian purchased an all-risk commercial property insurance policy (Policy) from AFM, effective from September 12, 2019, to September 12, 2020. The Policy begins with a general grant of coverage that protects Moinian's insured property, both real and personal, against physical loss or damage, and it also provides coverage against physical loss or damage resulting from an event that qualifies as a "Business Interruption." The Policy also contains an "Exclusions" section, which delineates various provisions that preclude coverage from the general grant of coverage. Lastly, the Policy identifies "Additional Coverages." According to Moinian, in exchange for a "substantial premium payment," it was insured "with up to $750 million in per-occurrence coverage for Moinian's losses resulting from physical loss or damage at certain real and other property located throughout the United States."

It is undisputed that in early 2020, confirmed cases of COVID-19 were reported throughout the country, including states where Moinian maintained property insured by AFM. Moinian contends that, due to the COVID-19 pandemic, it "lost millions in bookings at hotel properties, non-payment of rent at residential and commercial properties, and failure to secure reasonably expected new rental income at residential and commercial properties." Moinian pursued a claim on its Policy.

By letter dated June 10, 2020, Moinian advised AFM that under its Policy it had sustained a "loss, expense, and/or damage * * * as a result of the [COVID-19] outbreak." The notice included a spreadsheet listing forty properties located in Los Angeles, Dallas, Newark, and New York, which Moinian claimed were covered under its Policy. On June 22, 2020, AFM responded and indicated, *inter alia*, that the Policy contained "Additional Coverages for Communicable Disease – Property Damage and Communicable Disease – Business Interruption, subject to all policy terms and conditions." AFM requested that Moinian respond to twelve requests for additional information so that it could determine whether coverage was appropriate.

On or about May 27, 2021, Moinian replied and advised AFM, *inter alia*, that when it became aware of individuals infected with COVID-19 at an insured location, it "took steps to disinfect all surfaces in any area where the individual had been present." Moinian explained that these steps included disinfecting an entire unit (and sometimes the entire floor) by using cleaning supplies purchased in connection with COVID-19 response measures. Moinian also responded that it "temporarily closed or limited access to common spaces including but not limited to leasing offices, fitness clubs, elevators, and hallways." The May 27, 2021 correspondence requested that AFM confirm (by June 9, 2021) that it would honor its obligations under the Policy's "Communicable Disease – Property Damage" and "Communicable Disease

- 4 -

– Business Interruption" coverages and reserved the right to pursue "coverage for its COVID-19-related losses under all other coverages in the Policy."

On June 2, 2021, Moinian filed this action, claiming financial losses as a result of the COVID-19 pandemic. The complaint averred that the Policy covered "losses from physical loss or damage to property," and Moinian estimated that its losses totaled "at least $90 million and could increase substantially." The complaint identified two counts: (1) Breach of Contract and/or Anticipatory Breach of Contract, seeking damages stemming from AFM's failure to provide coverage outside the "Additional" Communicable Disease provisions, and (2) a Declaratory Judgment that Moinian is entitled to full coverage under the Policy.

Following the filing of this civil action, AFM responded to the May 27, 2021 missive and indicated that the Policy excluded coverage for "contamination." AFM further explained that "[t]he presence of a virus, pathogen or disease causing or illness causing agent such as COVID-19 is a form of contamination as defined in the Policy, which is excluded." AFM's correspondence concluded:

> "The presence of COVID-19 at an insured location does not constitute 'physical damage of the type insured' as required under this provision. * * * Consequently, based on the limited information provided at this time, the coverage that appears potentially available under our Policy for losses arising from COVID-19 is found in our Communicable Disease coverages, assuming the conditions of those coverages are satisfied."

- 5 -

## The Superior Court Proceedings

On January 21, 2022, the parties appeared before the trial justice and argued their cross-motions for partial summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. As related by the trial justice, plaintiff argued, in relevant part, that: "(1) the presence of SARS-CoV-2 on, at, or in Moinian's covered property causes 'physical loss or damage' within the meaning of the Policy; [and] (2) the Contamination Exclusion applies, if at all, only to any '*costs*' incurred by Moinian to remediate damaged property and not to any business interruption '*losses*' incurred by Moinian * * *." The plaintiff supported its motion for partial summary judgment with several affidavits. The affidavits cumulatively averred that individuals infected with COVID-19 were present on, at, or in insured locations; certain government orders restricted or prohibited activity at insured locations; and COVID-19 was present at insured locations. On these bases, plaintiff alleged the interruption of its "business operations * * * caus[ed] Moinian to incur losses * * *."

The trial justice also summarized AFM's argument that: "(1) Moinian's affidavits which claim that employees, tenants, or guests were present at insured properties while positive for COVID-19 or had COVID-19 symptoms does not establish 'physical loss or damage' as required by the Policy; and (2) even if Moinian

could show 'physical loss or damage,' the Policy's Contamination * * * exclusion[] * * * appl[ies], save the Policy's Communicable Disease coverages."[2]

After hearing arguments and considering the parties' memoranda, the trial justice issued a comprehensive and thoughtful written decision, granting AFM's motion for partial summary judgment and denying Moinian's motion for partial summary judgment. In so doing, the trial justice examined the entire Policy and determined that the presence of COVID-19 "at, on, or in Moinian's insured properties does not constitute 'physical loss or damage' under the terms of the Policy." Thereafter, the trial justice continued his analysis and explained:

> "[N]ot only does COVID-19 not constitute 'physical loss or damage' under the terms of the Policy * * * COVID-19 is not capable of causing 'physical loss or damage' to property, full stop. Moreover, the factual scenario presented by Moinian (i.e., the presence of employees at insured locations who either tested positive for COVID-19 or are suspected to have COVID-19), in this [c]ourt's opinion, does not establish that Moinian has suffered 'physical loss or damage' to its insured locations as a matter of law."

---

[2] The trial justice elucidated that "Moinian is not seeking a judicial ruling from this [c]ourt that COVID-19 was present at each of its insured locations or that Moinian has established monetary damages resulting from that circumstance or from the issuance of orders of civil authority prohibiting access to Moinian's properties." Instead, the trial justice noted, "the primary issue presently before this [c]ourt is whether the Policy's terms provide coverage for losses allegedly arising from the presence of COVID-19 on Moinian's insured properties."

Additionally, the trial justice addressed the Contamination Exclusion and determined that the provision "unambiguously applies to bar Moinian's claim." The trial justice recognized that this conclusion was "consistent with the overwhelming majority of courts across the country who have had opportunity to apply this, or substantially similar, contractual language to bar insureds' COVID-19-related losses." Lastly, the trial justice rejected plaintiff's argument that even if the Contamination Exclusion applied, the exclusion was limited to precluding the recovery of "costs" but not "losses." Again, the trial justice observed this determination was consistent with "many other[]" courts.

Following the granting of AFM's motion for partial summary judgment and the denial of Moinian's motion for partial summary judgment, AFM moved pursuant to Rule 54(b) for the entry of partial final judgment on Count I, Breach of Contract and/or Anticipatory Breach of Contract. The trial justice granted the motion and entered partial final judgment pursuant to Rule 54(b), expressly indicating that "[p]laintiff's claim for coverage under the two Communicable Disease provisions survives as part of [p]laintiff's count for declaratory judgment (Count II)." This timely appeal ensued.

**Standard of Review**

"This Court reviews a grant of summary judgment *de novo*." *Allstate Insurance Company v. Ahlquist*, 59 A.3d 95, 97 (R.I. 2013) (brackets omitted)

- 8 -

(quoting *Moore v. Rhode Island Board of Governors for Higher Education*, 18 A.3d 541, 544 (R.I. 2011)). "We view the evidence in the light most favorable to the nonmoving party; and 'if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law,' we will affirm the judgment." *Id.* (brackets omitted) (quoting *Berman v. Sitrin*, 991 A.2d 1038, 1043 (R.I. 2010)). When the issue presented is one of contract interpretation, such as this case, "[t]his Court employs a *de novo* review of such questions of law." *Id.* at 98; *see also Koziol v. Peerless Insurance Company*, 41 A.3d 647, 649 (R.I. 2012) ("Whether a contract is ambiguous is a question of law.") (quoting *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083 (R.I. 2010)).

## Analysis

It is well settled that "[a]n insurance policy is contractual in nature." *Ajax Construction Company, Inc. v. Liberty Mutual Insurance Company*, 154 A.3d 913, 922 (R.I. 2017) (brackets omitted) (quoting *Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P.*, 115 A.3d 998, 1002 (R.I. 2015)). "In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally." *Koziol*, 41 A.3d at 650 (quoting *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I. 1983)). It is also axiomatic that this Court "shall not depart from the

literal language of the policy absent a finding that the policy is ambiguous." *Id.* (quoting *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 425 (R.I. 2009)). As such, "[t]he terms of the policy shall be given their plain, ordinary, and usual meanings." *Id.*

"This Court 'considers the policy in its entirety' and will not strain to find an ambiguity by 'viewing a word in isolation or by taking a phrase out of context.'" *Koziol*, 41 A.3d at 650-51 (quoting *Bliss Mine Road Condominium Association*, 11 A.3d at 1083). If a policy's terms are "reasonably susceptible of different constructions[,]" this Court will determine the terms to be ambiguous and strictly construe the policy against the insurer. *Id.* at 651 (quoting *Bliss Mine Road Condominium Association*, 11 A.3d at 1084). "The subjective intent of the parties is irrelevant in reaching this conclusion." *Id.* With these principles in mind, we turn our attention to the Policy.

The Policy at issue contains two primary coverage sections: "Property" and "Business Interruption." The parties agree that to invoke coverage, the policyholder must sustain a "physical loss or damage" to its insured property. The term "physical loss or damage" is not defined in the Policy. Thus, the parties have crafted extensive arguments regarding whether the presence of COVID-19 at an insured location constitutes a "physical loss or damage."

- 10 -

Notwithstanding the scope of the "physical loss or damage" coverage provisions, the Policy specifies that the "Property" provisions provide coverage, "except as hereinafter excluded"; and, that the "Business Interruption" provisions provide coverage, "subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section." Neither party disputes that coverage is dependent upon the applicability *vel non* of enumerated "Exclusions." For our purposes, we focus on one exclusion, which precludes coverage for:

> "*Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.* If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured. This exclusion does not apply to radioactive contamination which is excluded elsewhere in this Policy."[3] (Emphasis added and boldface omitted.)

The Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, *pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent*, fungus, mold or mildew." (Emphasis added.)

---

[3] Moinian does not contend that the second or third sentences of the quoted language are relevant; thus this appeal focuses on the first sentence that we have emphasized.

- 11 -

Here, there is no dispute that the Contamination Exclusion applies in these circumstances. During oral argument, Moinian acknowledged that the Contamination Exclusion barred it from seeking "costs."[4] Moinian's recognition

---

[4] To the extent that the applicability of the Contamination Exclusion may still be at issue, we note that Moinian's theory in this case establishes the applicability of the exclusion. The Contamination Exclusion precludes coverage for "[c]ontamination, and any cost due to contamination[.]" "Contamination" is defined as "any condition of property due to the actual or suspected presence of any * * * pathogen or pathogenic organism, bacteria, virus, [or] disease causing or illness causing agent[.]" Moinian's pleadings and representations make clear that the requirements of the Contamination Exclusion have been satisfied. For example, in its complaint, Moinian alleges: "The presence of the coronavirus/COVID-19 in, on, and around Moinian's insured property in multiple physical, tangible forms caused physical loss or damage to that property and as a result rendered it unusable and/or unfit for its intended purpose; that in turn prevented Moinian's tenants, prospective tenants, guests, and retail customers from using the property." Moinian's written arguments to this Court likewise represent that it has "suffered significant losses when COVID-19, a deadly physical substance, permeated and attached to its properties and rendered them functionally useless for their intended and insured purpose." These averments constitute a small sampling of the statements made by Moinian concerning its theory of coverage. We have no difficulty concluding that Moinian's allegations fall squarely within the Contamination Exclusion. *See, e.g.*, *AC Ocean Walk, LLC v. American Guarantee and Liability Insurance Company*, 307 A.3d 1174, 1190 (N.J. 2024) ("As Ocean Walk alleges in its complaint, its claim arises from a 'highly contagious and easily transmitted human pathogen.' The presence of SARS-CoV-2 in Ocean Walk's facilities falls squarely within the description of 'contamination' in the policies."); *Monarch Casino & Resort, Inc. v. Affiliated FM Insurance Company*, 85 F.4th 1034, 1040 (10th Cir. 2023) ("[T]he Contamination Exclusion's plain language precludes all-risk and business-interruption coverage on exactly what Monarch asks for: physical loss or damage associated with the presence of the virus, COVID-19."); *San Jose Sharks, LLC v. Superior Court of Santa Clara County*, 316 Cal. Rptr. 3d 393, 403 (Cal. Ct. App. 2023) ("Because plaintiffs alleged that it was a virus that caused the disputed physical damage to their property, their allegations implicate the policies' contamination exclusion."), *disapproved of on other grounds by Another Planet Entertainment, LLC v. Vigilant Insurance Company*, ___ P.3d ___, No. S277893, 2024 WL 2339132 (Cal. May 23, 2024).

- 12 -

that the Contamination Exclusion applies and serves to preclude coverage for costs significantly narrows the issue before this Court. Accordingly, we focus on Moinian's argument that because the Contamination Exclusion "includes the word 'cost,'" but "makes no reference to 'loss,'" Moinian is entitled to seek coverage for losses sustained due to the COVID-19 pandemic. *See, e.g.*, *San Jose Sharks, LLC v. Superior Court of Santa Clara County*, 316 Cal. Rptr. 3d 393, 404 (Cal. Ct. App. 2023) ("There is no dispute that the risk of physical loss or damage on which plaintiffs rely constitutes contamination within the meaning of the policy; plaintiffs dispute only whether earnings lost due to such damage are excluded."), *disapproved of on other grounds by Another Planet Entertainment, LLC v. Vigilant Insurance Company*, ___ P.3d ___, No. S277893, 2024 WL 2339132 (Cal. May 23, 2024). We disagree with Moinian's interpretation.

Moinian properly focuses on the beginning seven words of the Contamination Exclusion, which preclude coverage for: "Contamination, and any cost due to contamination[.]" According to Moinian, "if the word 'Contamination' in the exclusion implicitly encompassed *losses* (one form of financial impairment), then it would also encompass *costs* (a different form of financial impairment) as well, such that there would be no need for the exclusion to refer specifically to 'any cost due to contamination.'" As such, Moinian suggests that AFM's interpretation "renders the words 'any cost due to contamination' superfluous."

- 13 -

Moinian's argument itself overlooks the first two words in the phrase, "[c]ontamination, and any cost due to contamination[.]" As one appellate court noted when it interpreted a similar exclusion, "[t]he provision does not merely state that the policy excludes 'any cost due to Contamination.'" *Firebirds International, LLC v. Zurich American Insurance Company*, 208 N.E.3d 1187, 1195 (Ill. App. Ct. 2022). Rather, the court explicated:

> "[T]he policy excludes 'Contamination, *and* any cost due to Contamination.' * * * The conjunctive 'and' means 'together with; in addition to; as well as.' The American Heritage Dictionary 52 (4th Coll. ed. 2004). Read with the definition inserted for the word, the provision excludes from coverage 'Contamination, *together with, in addition to, as well as* any cost due to Contamination.' Furthermore, insertion of a comma after the first word 'Contamination,' indicates that 'Contamination' itself is considered an independent exclusion not subject to qualification by any succeeding phrases." *Id.* (brackets omitted).

Likewise, another appellate court interpreting the same exclusionary language rejected a similar argument, elucidating that "[n]othing in the structure of the relevant section or the definition of 'contamination' supports the inference that 'contamination' refers to a type of loss, as opposed to a type of 'risk'—that the property's condition will be altered by viral contamination—from which diverse losses may flow." *San Jose Sharks, LLC*, 316 Cal. Rptr. 3d at 405.

We agree with the plain language interpretations employed by these appellate courts and similarly observe that the Policy excludes coverage for "[c]ontamination,

- 14 -

and any cost due to contamination," and that "contamination" is defined without qualification as a type of risk, namely "any condition of property due to the actual or suspected presence of any * * * pathogen or pathogenic organism, bacteria, virus, [or] disease causing or illness causing agent[.]"

Indeed, Moinian acknowledges in its reply brief that the Policy "defines 'contamination' in terms of the property's 'condition'—in other words, its present state of existence" and that the term "'contamination' thus refers to efforts to restore the 'condition of property' to a healthy state." (Emphasis omitted.) The plaintiff also represents (in its opening brief) that "although Moinian has spent significant sums to sanitize and remediate its properties, it was unable to eliminate the virus entirely from its properties, resulting in significant business interruption losses." Moinian's own theory of coverage establishes that the conditions of the Contamination Exclusion have been satisfied. *See* footnote 4, *supra*; *Froedtert Health, Inc. v. Factory Mutual Insurance Company*, 69 F.4th 466, 472 (7th Cir. 2023) ("In clear and precise terms, that exclusion broadly applies to the policy's general coverage to exclude any losses from contaminants, including viruses like COVID-19."); *San Jose Sharks, LLC*, 316 Cal. Rptr. 3d at 403 ("[T]he policy unambiguously excludes physical loss or damage in the form of viral contamination from the scope of coverage.").

To the extent that Moinian suggests that both parties' interpretations render one or more words of the Contamination Exclusion superfluous, Moinian argues that its interpretation is reasonable, and therefore, must prevail. However, this argument "overlooks the fact that insurance policies often use overlapping provisions to provide greater certainty on the scope of coverages and exclusions." *Crescent Plaza Hotel Owner, L.P. v. Zurich American Insurance Company*, 20 F.4th 303, 311 (7th Cir. 2021); *see also Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012) ("[I]nsurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected.").

Moinian makes two final points. First, Moinian posits that a review of the entire Policy distinguishes "costs" and "losses," thus supporting its position that with respect to the Contamination Exclusion, the inclusion of the word "cost," but the absence of the word "loss," has deliberate meaning. We have reviewed the Policy *in toto*, *see Allstate Insurance Company*, 59 A.3d at 98, and disagree. Our conclusion is premised upon giving effect and meaning to the word "[c]ontamination[.]" *See San Jose Sharks, LLC*, 316 Cal. Rptr. 3d at 405. Moreover, as discussed *supra*, the exclusion for "[c]ontamination" is intended to limit coverage for a "type of risk," not a "type of loss." *See id.*

Second, Moinian references four trial court decisions (two of which are unpublished) in support of its argument that some courts interpreting the same

- 16 -

exclusionary language have concluded that its interpretation is, at least, reasonable. On that basis, Moinian contends that its interpretation must control. *See, e.g.*, *Textron, Inc. v. Aetna Casualty and Surety Company*, 638 A.2d 537, 539 (R.I. 1994) ("When this [C]ourt finds that an ambiguity exists or that the terms of an insurance contract are subject to more than one reasonable interpretation, the insurance contract will be strictly construed against the insurer.").

This Court prohibits citation to unpublished decisions under these circumstances. *See* Article I, Rule 18(l) of the Supreme Court Rules of Appellate Procedure ("Citation to a case contained in an electronic service (e.g. Westlaw or Lexis) is permissible only when the case which is set to be published in the national reporter is not yet published in book form."). Furthermore, other appellate courts have found the reasoning of these trial court decisions unpersuasive, as do we. *See San Jose Sharks, LLC*, 316 Cal. Rptr. 3d at 404 n.9; *Firebirds International, LLC*, 208 N.E.3d at 1195 n.4.[5]

## Conclusion

For the reasons discussed herein, we affirm the Superior Court's partial final judgment. We express no opinion concerning any issue(s) remaining in Count II,

---

[5] Moinian also argues that the trial justice improperly short-circuited discovery and erroneously made factual findings at the summary judgment stage, but these allegations are limited to Moinian's argument that the presence of COVID-19 at insured properties constitutes a physical loss or damage. Moinian makes no similar arguments concerning the statutory interpretation of the Contamination Exclusion.

including but not limited to, the plaintiff's claim for coverage under the two Communicable Disease provisions. The papers in this case are remanded to the Superior Court for further proceedings consistent with this opinion.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Josephson, LLC d/b/a The Moinian Group v. Affiliated FM Insurance Company. |
| **Case Number** | No. 2023-22-Appeal. (PC 21-3708) |
| **Date Opinion Filed** | May 31, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Orrie A. Levy, Esq., *Pro Hac Vice* <br> Stephen M. Prignano, Esq. |
| | For Defendant: <br><br> Kelly A. Librera, Esq., *Pro Hac Vice* <br> Dana M. Horton, Esq. |